**In the Matter of J.L.D., A Juvenile.**

No. 06–01–00114–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 4, 2002.
Decided April 18, 2002.

R. Wesley Tidwell, The Moore Law Firm, LLP, Paris, for appellant.

Michael Skotnik, Asst. Dist. Atty., Bonham, Mark Burtner, Lamar County/District Attorney, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

J.L.D., a juvenile,[1] brings this appeal alleging that the juvenile court erred and violated her constitutional rights during her delinquency proceedings by revoking her community supervision and committing her to the Texas Youth Commission ("TYC") on the basis of an assault that the State had previously used to extend her community supervision.

Before a juvenile court may find that a minor has engaged in delinquent conduct, it must conduct an adjudication hearing. *See* TEX. FAM.CODE ANN. § 54.03 (Vernon Supp.2002). If the court makes an affirmative finding that the juvenile has engaged in delinquent conduct, it must hold a separate disposition hearing for sentencing. *See* TEX. FAM.CODE ANN. § 54.04 (Vernon Supp.2002). On June 29, 2000, the juvenile court held J.L.D.'s adjudication hearing and found that she engaged in delinquent conduct by committing an aggravated assault resulting in serious bodily injury to the victim. At J.L.D.'s disposition hearing, the court committed her to the TYC for an indeterminate period of time. Commitment to the TYC is statutorily permissible where a child has committed a felony offense. *See* TEX. FAM.CODE ANN. § 54.04(d)(2). J.L.D. filed a motion for new trial. The court granted the motion, vacated the commitment order, and placed J.L.D. on community supervision for twelve months.

During this twelve-month period, J.L.D. assaulted another person. We refer to this assault as the "second assault." Based on the nonaggravated second assault, the State petitioned the court to modify the disposition, alleging that J.L.D. violated her condition of supervision that she must not violate any state law. The court held the requisite hearing to modify disposition. *See* TEX. FAM.CODE ANN. § 54.05 (Vernon Supp.2002). Pursuant to a plea bargaining agreement, J.L.D. signed a stipulation of evidence admitting that she violated her community supervision by committing the second assault, and the court modified the prior disposition by extending J.L.D.'s supervisory period for five months and placing her in the custody of her grandmother.

Shortly thereafter, the State again petitioned the court to modify disposition. The State alleged in count one, that J.L.D. committed the nonaggravated second assault mentioned above and, in count two that J.L.D. intentionally fled from her probation officer, who was lawfully attempting to arrest her. J.L.D. objected to count one on the bases of due process and former jeopardy. The trial court overruled her objection and ultimately ordered that J.L.D. be committed to the TYC for an indefinite period of time not to exceed the time at which she becomes twenty-one years of age.

J.L.D. contends her due process rights were violated because the second assault was used against her in two separate community supervision modification proceedings, the first to extend her supervision by five months and the second to revoke community supervision altogether. The State presents no argument on this issue. The State argues instead that count two, which alleges that J.L.D. fled from her probation officer, was a sufficient basis itself to revoke her supervision, and therefore, the trial court did not abuse its discretion.

■ We first consider whether J.L.D. has preserved her complaints for appellate review. To preserve a complaint for appellate review, a party must timely present

---

1. J.L.D. was born on February 27, 1984. She became eighteen years of age this year.

to the trial court an objection or motion stating the specific grounds for the desired ruling, if the specific grounds are not apparent from the context. TEX.R.APP. P. 33.1(a)(1). Within the context of revocation hearings, where the issue is the preservation of due process complaints, a due process objection must have been raised before the trial court to preserve it for appellate review, even where the defendant has a manifestly meritorious claim. *See Rogers v. State*, 640 S.W.2d 248, 265 (Tex.Crim.App.1982) (Opinion on State's Second Motion for Rehearing); *Hise v. State*, 640 S.W.2d 271, 273 (Tex.Crim.App. 1982) (Opinion on State's Motion for Rehearing); *Wright v. State*, 640 S.W.2d 265, 269 (Tex.Crim.App.1982) (Opinion on State's Motion for Rehearing). Although J.L.D. focused on a double jeopardy objection at the revocation hearing, she also raised her right to due process. Her counsel stated, "We would allege that it has previously been disposed of and that hearing Count One [alleging the second assault] again here today is a violation of her due process right. It violates not only the United States Constitution but the Texas Constitution. It's res judicata, double jeopardy." We find this to be sufficient to preserve both a due process and a double jeopardy objection for appellate review. Both the court and the State were on notice of the due process objection.

▇▇▇ Two counts formed the basis for the petition to revoke J.L.D.'s community supervision. However, it is clear from both the trial court's oral pronouncement of sentence and its written judgment that the trial court based its decision to revoke community supervision on only one of the counts, namely the second assault. The court specifically found in its oral pronouncement that the evidence was factually insufficient to support count two, which alleged that J.L.D. intentionally fled from her probation officer. Immediately following this oral finding, the court recited two more findings, that J.L.D. was previously found to have engaged in delinquent conduct (the first assault) because of which she was placed on community supervision for twelve months, and that on January 30, 2001, she violated her supervision terms by committing the second assault as alleged in count one of the State's petition. The court repeated these two additional findings in its written order, although it made no reference in this written order to the allegation that J.L.D. had fled from her probation officer. A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement. TEX.CODE CRIM. PROC. ANN. art. 42.01, § 1 (Vernon Supp.2002); *see Ex parte Madding*, 70 S.W.3d 131, 135 (Tex.Crim.App. 2002, no pet. h.); *Banks v. State*, 708 S.W.2d 460, 461–62 (Tex.Crim.App.1986) (reforming insufficient written judgment to accurately reflect cumulation order orally pronounced at sentencing). Thus, it is necessary to read the transcript of the trial court's oral pronouncement of sentence in order to properly understand the court's true ruling. The State's argument that count two is a sufficient basis to uphold the judgment is without merit because it is inconsistent with the court's actual finding against count two.

We next consider J.L.D.'s due process complaint. The Texas Court of Criminal Appeals has stated that when on community supervision, a probationer's liberty, "although indeterminate, includes many of the core values of unqualified liberty, such as freedom to be with family and friends, freedom to form other enduring attachments of normal life, freedom to be gainfully employed, and freedom to function as a responsible and self-reliant person." *Rogers v. State*, 640 S.W.2d at 251–52.

Consequently, "[i]t would be the epitome of arbitrariness for a court first to conduct a hearing on alleged violations and exercise its discretion to return the probationer to probation (whether by a 'continuance of the hearing' or by a 'continuance of the probation'), and then decide several months later to exercise its discretion in the opposite fashion by revoking the probation without any determination of a new violation." *Id.* at 252.

■■■ Thus, where a trial court holds a hearing on a motion to revoke or modify community supervision and disposes of that motion by allowing a person to remain on supervision with modified conditions, the court is thereafter without authority to change that disposition at a subsequent hearing where no further violation of supervision is shown. *Ex parte Tarver*, 725 S.W.2d 195, 199–200 (Tex.Crim.App.1986); *Furrh v. State*, 582 S.W.2d 824, 827 (Tex. Crim.App.1979). To do so violates a probationer's liberty interest as safeguarded by federal constitutional due process protection[2] and state constitutional due course of law protection.[3] *See Rogers v. State*, 640 S.W.2d at 252; *Hise v. State*, 640 S.W.2d at 272; *Wright v. State*, 640 S.W.2d at 269. The cases just cited all concern adult criminal proceedings. Juvenile delinquency procedures are civil in nature. *See In re J.R.R.*, 696 S.W.2d 382, 383 (Tex.1985). Nevertheless, there are certain constitutional protections to which a juvenile is entitled as in a criminal trial, because juvenile proceedings may also result in deprivations of liberty. These include due process protections. *See id.* at 384 ("A juvenile is entitled to due process and is thus given double jeopardy protection."). There is no reason why the constitutional protections afforded adults against deprivations of liberty at community supervision revocation proceedings should not be available for juveniles. We therefore hold that they apply equally in circumstances such as these, where one act is twice used to modify or revoke community supervision.

■ J.L.D. characterizes her complaint in terms of double jeopardy rather than due process. A double jeopardy objection is a type of due process objection, which is why it is through the Fourteenth Amendment Due Process Clause that the Fifth Amendment Double Jeopardy provision is applied against the states. *See Brown v. Ohio*, 432 U.S. 161, 164, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Despite the mischaracterization, the substance of J.L.D.'s argument on appeal is that the Court violated her right to due process by twice using one act to modify her community supervision. We conclude that the juvenile court violated J.L.D.'s due process liberty rights when it modified a previous disposition, revoking her community supervision without a showing of a further violation.[4]

---

**2.** "Nor shall any State deprive any person of life, liberty, or property without due process of law. . . ." U.S. CONST. amend. XIV.

**3.** "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19.

**4.** Although not raised as an issue either at trial or on appeal, we note that the court's actions appear to have been in violation of J.L.D.'s due process rights in another way as well. The record reveals that in the first community supervision modification proceeding, J.L.D. signed a stipulation of evidence admitting that she violated her community supervision by committing the second assault. Statements by defense counsel to the trial court suggest that this was done pursuant to a plea bargaining agreement in return for the five month extension of supervisory time. The United States Supreme Court has held that when a prosecutor makes a promise as part of a plea bargain, due process of law requires that the promise must be kept. *See*

We reverse the judgment and remand the proceeding to the juvenile court for further proceedings consistent with this opinion.

*Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also Gibson v. State,* 803 S.W.2d 316, 318 (Tex. Crim.App.1991). Using the same act to subsequently revoke J.L.D.'s community supervision appears to have been a breach of the plea bargain.