

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00081-CR

PAULA KAY MCPHERSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 26,423

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss
Concurring Opinion by Justice Carter

MEMORANDUM OPINION

In at least two ways, it was a novel procedure by which Paula Kay McPherson came to be sentenced to twenty-two months' confinement and ordered to pay various sums[1] based on a charge of "credit card or debit card abuse." But, except for attorney's fees and a Crime Stoppers reward she has been ordered to repay, error has not been preserved for our review. Thus, after striking the attorney's fees and Crime Stoppers reward from the judgment, we affirm the modified judgment.

Originally, McPherson had been put on deferred adjudication community supervision. During her period of community supervision, in October 2012, the community supervision and corrections department (not the district attorney's office) filed a request for a "violation hearing," alleging that McPherson violated the terms of her community supervision by using cocaine and failing to make certain ordered payments. Although the State's brief claims that "[t]he Hunt County District Attorney was neither present nor a party" to this request for a violation hearing, the record shows otherwise. A hearing was held October 29, 2012, at which Keli Aiken, a Hunt County Assistant District Attorney, appeared for the State. The trial court's judgment recites that "a verbal Motion to Amend Community Supervision" was made.[2] Following this hearing,[3] the court extended McPherson's community supervision for a period of two years, making the termination date November 4, 2014, committed McPherson to a Substance Abuse Felony

---

[1]McPherson was ordered to pay $450.50 in attorney's fees, $733.00 in restitution, $66.00 for urinalysis, and a $42.00 Crime Stoppers reward.

[2]This motion should have been made on behalf of the State by an attorney licensed to practice law, not the community supervision officer who signed and filed the request for a violation hearing.

[3]Notice of the hearing was sent to the district attorney's office, but McPherson was unrepresented at this hearing.

Punishment Facility (SAFPF), and required her to obey all rules and regulations of the facility and to participate in treatment.[4] Within two to three months, however, it was reported that McPherson was not "chemically dependent[] [and,] therefore, did not qualify" for the program.

That failure to qualify for the program apparently triggered the second revocation motion, the one that resulted in the judgment now on review. On January 9, 2013, the same community supervision officer, in a peculiar practice, filed a motion to proceed with adjudication, signing it in her name "for" the district attorney's office. This time, however, the district attorney's office claimed ownership of this motion, which again alleged the same grounds used in the request for a violation hearing.[5] Following a hearing on this motion,[6] the trial court found that McPherson violated the terms and conditions of her community supervision by using cocaine and failing to pay restitution as ordered.[7] It adjudicated McPherson's guilt for the offense of credit card abuse and sentenced her to the confinement and payments set out above. Although McPherson argues

---

[4]Although the amendment to "include SAFPF" was mentioned at the hearing, there was no mention that community supervision was to be extended by two years at the hearing. The trial court also waived the community supervision fee "during the time the defendant is in custody of the SAFPF facility."

[5]The motion to proceed with adjudication also contained an additional allegation that McPherson failed to pay the Crime Stoppers reward. However, the trial court failed to find this allegation true.

[6]At the hearing on the motion to proceed to adjudication, Amber Richardson, McPherson's community supervision officer, testified that McPherson admitted to using cocaine. Richardson also stated that McPherson missed monthly payments during September 2011 and April 2012 and had not paid $42.00 of the Crime Stoppers reward.

[7]McPherson argues that the "State in this case failed to show that the failure to pay [restitution] was intentional" and that "[r]evocation of probation for failure to pay fees and restitution when a probationer is unable to pay the total amount denies due process of law." To revoke community supervision, the State must prove every element of at least one ground for revocation by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 10 (West Supp. 2012); *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.); *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.). McPherson does not challenge the revocation ground alleging that she used cocaine. If the State's proof is sufficient to prove any one of the alleged community supervision violations, the revocation should be affirmed. *T.R.S.*, 115 S.W.3d at 321 (citing *Stevens v. State*, 900 S.W.2d 348, 351 (Tex. App.—Texarkana 1995, pet. ref'd)). To the extent McPherson's brief can be interpreted as raising a sufficiency of the evidence issue, it is overruled.

that there was no proof that she had the ability to make the payments, she admitted to the cocaine use.

On appeal, McPherson argues that the trial court erred in revoking her community supervision since the same grounds alleged in the motion to proceed with adjudication were the basis of a prior modification and extension of community supervision. She also complains that the above-recited fees should be deleted from the judgment because they were "not initially ordered" at sentencing and because she is indigent.

*(1)     McPherson Failed to Preserve Her Due Process Claim*

McPherson complains that the trial court erred in essentially changing its mind on the method of punishment for the same alleged community supervision violations. The Texas Court of Criminal Appeals has explained:

> The probationer who has been returned to probation after a hearing regardless of the procedural label, retains the valuable liberty of probation and the due process protection of the Fourteenth Amendment [of the United States Constitution] and [Article I,] Section 19 [of the Texas Constitution].
>
> This protection includes the fundamental requirement that the probation, recently returned, not be taken away arbitrarily . . . . It would be the epitome of arbitrariness for a court first to conduct a hearing on alleged violations and exercise its discretion to return the probationer to probation (whether by a "continuance of the hearing" or by a "continuance of the probation"), and then decide several months later to exercise its discretion in the opposite fashion by revoking the probation without any determination of a new violation.

*Rogers v. State*, 640 S.W.2d 248, 252 (Tex. Crim. App. 1981).

Thus, it is error to subsequently revoke community supervision in the absence of allegations or proof of subsequent violations where the trial court had previously decided to continue the defendant on community supervision. *Rogers*, 640 S.W.2d at 252; *Rains v. State*,

4

678 S.W.2d 308, 309 (Tex. App.—Fort Worth 1984, pet. ref'd). In other words, in the absence of other allegations, a trial court should not simply change its mind and revoke community supervision once it has decided not to do so.

However, no such complaint was raised by McPherson at trial.[8] "As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). Accordingly, this point of error has not been preserved for our review. *Mallett v. State*, 661 S.W.2d 100, 101 (Tex. Crim. App. 1983); *Rogers*, 640 S.W.2d at 263–64 (op. on second reh'g); *see In re J.L.D.*, 74 S.W.3d 166, 168–69 (Tex. App.—Texarkana 2002, no pet.) (discussing preservation requirement); *see also Polston v. State*, No. 06-98-00271-CR, 1999 WL 641654, at **1–2 (Tex. App.—Texarkana Aug. 25, 1999, no pet.) (mem. op., not designated for publication)[9] (defendant failed to preserve complaint that trial court first modified terms of community supervision following hearing and then revoked based on second hearing on amended motion to revoke). We must overrule this point of error.

*(2)    Deletion of Attorney's Fees and Crime Stoppers Reward is Required*

A trial court has the authority to order the reimbursement of court-appointed attorney's fees.

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency

---

[8]McPherson's motion for new trial failed to raise this issue.

[9]Although this unpublished case and others cited herein have no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay.

TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2012). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011); *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010).

Here, the trial court found McPherson to be indigent, and the State concedes that the record before us contains no determination or finding by the trial court that she had any financial resources or was able to pay the appointed attorney's fees. Thus, the assessment of the $450.50 in attorney's fees for counsel appointed to represent McPherson was erroneous and should be deleted. *See generally Mayer*, 309 S.W.3d 552; *Taylor v. State*, No. 02-12-00106-CR, 2013 WL 978842, at *1 (Tex. App.—Fort Worth Mar. 14, 2013, pet. struck) (mem. op., not designated for publication); *Roberts v. State*, No. 02-11-00500-CV, 2013 WL 452177, at *2 (Tex. App.—Fort Worth Feb. 7, 2013, no pet.).

"After a defendant has been convicted of a felony offense, the judge may order a defendant to repay all or part of a reward paid by a crime stoppers organization." TEX. CODE CRIM. PROC. ANN. art. 37.073(a) (West Supp. 2012). "In determining whether the defendant must repay the reward or part of the reward, the court shall consider . . . the ability of the defendant to make the payment and the financial hardship on the defendant to make the required payment." TEX. CODE CRIM. PROC. ANN. art. 37.073(b)(1) (West Supp. 2012). Again, the State concedes that the record contains no evidence demonstrating McPherson's ability to pay the reward and that it should be deleted from the judgment.

6

McPherson also complains that the trial court erred in ordering her to pay for a urinalysis evaluation reimbursement because the fee was not mentioned during her sentencing and because she is indigent. After "assess[ing] punishment at 22 months state jail" and reducing restitution to $733.00, the trial court reset the matter "from one week from today for entry of judgment." Subsequently, at a sentencing hearing, the trial court orally pronounced its assessment of the "$66 in UA fee." Because legislatively mandated fees and costs are not punitive in nature,[10] they need not be included in the oral pronouncement of sentence to be validly imposed on a convicted defendant. *See Armstrong*, 340 S.W.3d at 766–67; *Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009).

Also, a defendant's ability to pay is not relevant to legislatively mandated court costs, and a trial court may order "the defendant to pay or reimburse a community supervision and corrections department for any other expense that is . . . incurred as a result of the defendant's participation in the pretrial intervention program." TEX. CODE CRIM. PROC. ANN. art. 102.012(b)(1) (West Supp. 2012); *see* TEX. GOV'T CODE ANN. § 76.011(b) (West 2013)*; Owen v. State*, 352 S.W.3d 542, 546 (Tex. App.—Amarillo 2011, no pet.); *Williams v. State*, 332 S.W.3d 694, 700 (Tex. App.—Amarillo 2011, pet. denied).

We sustain McPherson's point of error complaining of the addition of attorney's fees and the Crime Stoppers reward in the absence of evidence demonstrating her ability to pay them.

---

[10]Payment of a urinalysis fee is not included within Chapter 12 of the Texas Penal Code entitled Punishments and does not alter the range of punishment.

We modify the trial court's judgment to delete the requirement to pay $450.50 in attorney's fees and $42.00 for the Crime Stoppers reward. We affirm the judgment, as modified.

Josh R. Morriss, III
Chief Justice

CONCURRING OPINION

On November 5, 2010, Paula Kay McPherson entered a plea of guilty to debit card abuse and was placed on two years' community supervision. Adjudication of guilt was deferred. Almost two years later, on October 12, 2012, a community supervision officer filed a request for a "violation hearing." A very brief hearing (four pages of the reporter's record) was conducted by the trial court on October 29, 2012. Disregarding the recommendation of the community supervision department for drug counseling, the trial court announced that the terms of community supervision would be amended to include treatment and incarceration at a Substance Abuse Felony Punishment Facility (SAFPF). Even though not mentioned in the trial court's oral pronouncement, the written order entered in this matter also extended the term of community supervision by two years. This clearly was not a formal motion to revoke—no motion to revoke or modify was filed, the attorney for the State was present but did not participate, the defendant was not represented by counsel, and no evidence was presented other than a colloquy between the trial court and the defendant. That conversation began:

> THE COURT:    Ms. McPherson, probation is stating that you tested positive for cocaine.
> [McPherson]:    Yes, Sir.

8

THE COURT: Do you know what SAFPF is?

The ultimate result was that McPherson, without encountering a motion to revoke or modify and without the assistance of counsel, was transformed from a person at liberty (subject to community supervision conditions) to a person jailed awaiting a term of "confinement and treatment." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 14(a) (West Supp. 2012). Additionally, even though it was not made known to her at the hearing, her term of community supervision was extended by two years. Since she was not chemically dependent and otherwise did not qualify for SAFPF under the statutory criteria as defined by Texas law, she was returned from SAFPF to Hunt County. After a traditional revocation hearing was conducted, she was confined for twenty-two months in a state jail. *See id.* (suitability criteria for SAFPF established in accordance with Section 493.009(b) of Texas Government Code).

The community supervision statute allows a judge to authorize a community supervision officer to modify the conditions of community supervision "for the limited purpose of transferring the defendant to different programs within the community supervision continuum of programs and sanctions." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 10(d) (West Supp. 2012). Perhaps that is what was attempted here. If so, the trial court did not authorize the community supervision department to make such modifications of conditions, but was personally involved in that process. Changes to the conditions and programs of community supervision using this procedure are authorized so long as the defendant agrees to such modification in writing; if not, then the case shall be referred to the judge for modification in the manner provided by Article 42.12, Section 22 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art.

9

42.12, § 10(e) (West Supp. 2012). At such a modification hearing, the defendant is entitled to counsel. TEX. CODE CRIM. PROC. ANN. art 42.12, § 21 (West Supp. 2012). Here, even though the defendant was without counsel, she did not agree to the modifications. But, without her consent, the conditions of her community supervision were radically modified, and she was given two more years of community supervision.

After returning from SAFPF, the same allegation that was used in the review hearing was also used at the actual revocation hearing. The trial court found her guilty of the original offense of credit card abuse, revoked community supervision, and assessed twenty-two months in the state jail.

This procedure is contrary to that specified in our statutes. The term of community supervision was extended during an informal "review hearing" where McPherson was not represented by counsel. Before sending a defendant to SAFPF, a trial court must inquire into the defendant's suitability for the program and must determine whether the defendant meets the statutory criteria established by Article 42.12, Section 14(b)(3)(B) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 14(b)(3)(B). In this case, without inquiry into her eligibility for SAFPF and despite the community supervision department's recommendation for drug counseling, the trial court ordered McPherson's confinement and treatment at SAFPF.

Further, absent a proper extension of her term, McPherson's community supervision period would have terminated on November 4, 2012. The motion to revoke was not filed until January 9, 2013. Had McPherson's term of community supervision not been extended at the

10

"review hearing," she would have been discharged from community supervision before a proper motion to revoke was ever filed. The trial court lacks jurisdiction to adjudicate guilt if the community supervision period has expired unless a timely motion to revoke is filed and a warrant or capias is issued. *In re Cherry*, 258 S.W.3d 328, 332 (Tex. App.—Austin 2008, no pet.). Otherwise, the trial court "shall dismiss the proceedings against the defendant and discharge him." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(c) (West Supp. 2012). This case presents several issues regarding McPherson's incarceration. While these issues have not been preserved for consideration on direct appeal, perhaps the proper procedure for determining if McPherson is illegally confined is the application for writ of habeas corpus.

I concur with the majority opinion.


                                                        Jack Carter
                                                        Justice


Date Submitted:      August 12, 2013
Date Decided:        August 27, 2013

Do Not Publish


11